UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STREET-WORKS DEVLOPMENT LLC and
CRESTWOOD LOFT PARTNERS LLC,

               Plaintiffs,

  - against -

JOHN H. RICHMAN,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No.:

**FILED**

FEB - 4 2013

**COMPLAINT** USDC WP SDNY

**JURY DEMANDED**

**13 CV 0774**

**JUDGE BRICCETTI**

     Plaintiffs, STREET-WORKS DEVELOPMENT, LLC and CRESTWOOD LOFT PARTNERS, LLC, by their attorneys, Klapper & Fass, complaining of defendant, JOHN H. RICHMAN, alleges as follows:

## JURISDICTION AND VENUE

     1.     This Court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. §1332, in that plaintiff has its principal place of business in a state which is different from the state in which defendant is a citizen. The amount in controversy exceeds Seventy Five Thousand ($75,000.00) Dollars, exclusive of interest.

     2.     The Court also has pendent and ancillary jurisdiction to grant plaintiffs the equitable relief also requested by plaintiff.

     3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a)(1) in that the plaintiff resides in this district.

## THE PARTIES

     4.     Plaintiff, STREET-WORKS DEVELOPMENT LLC ("Street-Works") is a New York limited liability company with its principal place of business located at 30 Glenn Street, White Plains, New York 10603.

     5.     Plaintiff, CRESTWOOD LOFT PARTNERS LLC ('Loft") is a New York

limited liability company with its principal place of business located at 30 Glenn Street, White Plains, New York 10603.

6.      Defendant is a resident of the State of Florida with an address at 1320 Lenox Avenue, Miami Beach, Florida 33139; and all times relevant hereto, transacted business in the State of New York.

## FACTS COMMON TO ALL COUNTS

7.      Prior hereto, and in or about the Spring of 2011, plaintiff, Street-Works and defendant had a common interest in developing a parcel of real property (sometimes hereinafter referred to as the "Property") known as 300 and 308 Columbus Avenue, Tuckahoe, New York, located in the County of Westchester, State of New York (the "Project").

8.      In order to develop the Project, plaintiff Street-Works and defendant orally decided to form a joint venture which they called Street-Works/Richman ("SWR"), in which each party would, among other things, contribute certain real estate development and planning skills necessary for the development of the Project.

9.      In connection with SWR, the parties also identified certain other potential sites for development, but no contracts to purchase such sites were ever undertaken.

10.      Each party knew and understood that in order to fund the Project from development through completion, investment capital would need to be secured from persons outside of SWR.

11.      As a result, plaintiff Street-Works and defendant discussed possible arrangements whereby each party would share in certain developer fees and special consideration typically paid to organizers and sponsors of a real estate development project commonly referred to as a "promote".

12.    The parties never reached a firm agreement on such sharing of fees and promotes and no writing was ever entered into formalizing SWR or any fee and promote sharing arrangement.

13.    Through the efforts of plaintiff Street-Works, and with the knowledge and consent of defendant, plaintiff was able to secure certain initial capital investment in excess of $850,000.00 for the Project and caused to be formed several New York limited liability companies, including, plaintiff Loft as well as SWD Crestwood Partners LLC ("Partners") and Crestwood Developer Partners LLC ("Developer").

14.    Plaintiff Loft was formed for the purpose of entitling and executing the Project and was characterized as the "Sponsor" of the Project. Developer was formed as the entity comprising certain outside investors; and Partners was formed to be a member of the Sponsor and to invest in the Project.

15.    Partners is a member of plaintiff Loft, and Developer is a member of Partners.

16.    Plaintiff Street-Works is a member of Partners.

17.    On or about July 1, 2011, as part of the plan for the Project, plaintiff Street-Works entered into a purchase and sale agreement for the Property (the "PSA"), which was subsequently assigned to plaintiff Loft.

18.    From in or about the Summer of 2011 through the Fall of 2012, plaintiff Street-Works and defendant pursued the development of the Project, during which time the parties could not reach an agreement on how the parties would either share in fees and promotes or on what basis defendant would formalize his interest in the Project or any other potential project.

19.    Although at the commencement of SWR, and for a period of time thereafter,

neither party drew any compensation for the services each party was rendering to the Project, beginning in or about December 2011, defendant advised plaintiff that he needed "current income" and that his need for current income was "critical".

20.    In order to accommodate defendant, plaintiff Street-Works advanced to defendant certain unearned fees for the Project to be credited against any future fees to be paid defendant on the Project.

21.    As a result thereof, defendant continued to provide various levels of service for the Project until in or about September 2012.

22.    In or about February 2012, defendant was offered a membership interest in Partners.

23.    Defendant never accepted such offer of a membership interest in Partners and never executed any organizational document which would reflect his agreement to be a member of Partners or any other entity.

24.    In or about July 2012, since defendant had chosen not to become a member of Partners, plaintiff Street-Works and defendant pursued another means by which to formalize their relationship, whereby in addition to the aforesaid fee advances, defendant would be given a participation interest in certain net fees and promotes that plaintiff, Street-Works was entitled to receive in accordance with the terms and conditions of plaintiff Street-Works' membership interest in Partners.

25.    Plaintiff Street-Works and defendant were not able to reach an agreement with regard to such participation agreement.

26.    In or about July 2012, plaintiff Street-Works obtained a Letter of Intent (the "Cigna Letter of Intent") from Cigna Affiliates Realty Investment Group, LLC ("Cigna") to provide

$4,850,000.00 for what is commonly known as limited partner equity to be used to finance the execution of the Project.

27.    In or about August 2012, plaintiff Street-Works obtained a Term Sheet (the "Principal Term Sheet") from Principal Global Investors ("Principal") to provide $10,440,000.00 for what is commonly known as a senior construction loan for the Project.

28.    At all times relevant hereto, defendant knew about the existence of the Cigna Letter of Intent and the principal Term Sheet.

29.    At all times relevant hereto, defendant knew that the Project could not be financed without the participation of Cigna and Principal.

30.    On or about September 15, 2012, defendant communicated to plaintiff Street-Works that he wanted plaintiffs to cause the real property underlying the Project, hereinbefore the Property, to be sold because in defendant's view it was the "only course that will be profitable (or worse case recoup any of the investment to date)."

31.    In or about September 15, 2012, plaintiffs did not agree that the Project should be terminated or that the Property needed to be sold.

32.    On or about September 15, 2012, with defendant's involvement in the Project at a reduced level and based upon the clear disagreement between plaintiff Street-Works and defendant over the viability of the Project, and otherwise, the inability of plaintiff Street-Works and Richman to reach a written and formalized agreement concerning their future interests in the Project, plaintiff Street-Works terminated SWR and so advised defendant.

33.    Subsequently, and despite the termination of SWR, defendant wrongfully continued to represent himself as part of the Project.

34.    Subsequently, upon information and belief, defendant falsely and maliciously

stated to, among others, the owner of the Property and to the municipal authorities where the Project is located words to the effect (the exact words as of yet unknown to plaintiff) that plaintiff did not have the ability to complete the Project.

35.     As a consequence thereof, on or about October 3, 2012, plaintiff Street-Works specifically and in writing demanded that defendant cease and desist from such conduct.

36.     Instead, on or about October 5, 2012, defendant again falsely represented to Cigna, Principal and other potential capital investors that he was a participant in SWR and that he had the right to review and approve any financial agreement for the Project.

37.     Based upon defendant's false representations, Cigna and other potential capital investors asked plaintiff Street-Works whether defendant was, in fact, correct and had the right to review and approve any financial agreement for the Project.

38.     Plaintiff Street-Works advised Cigna and other potential capital investors that defendant's statements were false and that the parties' venture had been previously terminated.

39.     Cigna then advised plaintiff Street-Works that it would not close on any deal to fund the Project as long as defendant continued to assert any rights in and to the Project and that as a condition to any such closing, Cigna would require a full release from defendant as well as defendant's release of plaintiffs and the Project entities.

40.     In addition, other potential capital investors advised plaintiff Street-Works that they would not participate in funding the Project unless Cigna was involved.

41.     Plaintiff Street-Works advised defendant of Cigna's condition and again requested that defendant cease and desist from representing himself as a participant in SWR and the Project and agree to provide Cigna and plaintiffs with the aforesaid releases.

42.     Defendant refused and still refuses to provide such releases.

43.    Based upon the time constraints of the purchase agreement for the Property, plaintiffs have insufficient time to secure financing to replace Cigna and other potential capital investors have communicated their unwillingness to participate in the Project in view of defendant's allegations.

44.    As of the date hereof, plaintiff Loft has expended in excess of $862,000.00 in connection with the Project.

45.    Consequently, and by reason of the acts and conduct of defendant, as of the date hereof, plaintiff Loft will lose all of its rights in and to the Property and the Project and all of its investment.

## COUNT ONE
## DECLARATORY JUDGMENT

46.    By reason of the foregoing, plaintiff Street-Works and defendant have a justiciable controversy that is ripe for adjudication.

47.    By reason the foregoing, plaintiffs request that the Court exercise jurisdiction over the parties and the controversy and declare the respective rights and obligations of plaintiff Street-Works and defendant such that the Court determine that SWR was legally terminated on or about September 15, 2012, and that thereafter, any rights that defendant had as a venture member of SWR and in and to the Project and any other potential project ended and terminated as of such date.

48.    Plaintiffs have no adequate remedy at law.

## COUNT TWO
## INJUNCTIVE RELIEF

49.    By reason of the foregoing, plaintiffs request that the Court enter a permanent injunction against defendant restraining and enjoining him from representing himself as a venture member of SWR or having any interest in the Project or any other potential project.

50.    Plaintiffs       have      no      adequate      remedy      at      law.

## COUNT THREE
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

51.    The aforementioned conduct was intended by defendant to interfere with the completion of the Project, including the Cigna Letter of Intent and the Principal Term Sheet, and to harm plaintiffs without any basis in law.

52.    The aforementioned conduct on the part of defendant constitutes tortious interference with plaintiffs' business relations.

53.    By reason of the foregoing, plaintiffs have suffered compensatory and consequential damages in an amount to proven at trial, but reasonably believed to be in excess of $862,000.00, plus interest.

## COUNT FOUR
## TORTIOUS INTERFERENCE WITH CONTRACT

54.    The aforementioned conduct was intended by defendant to interfere with the completion of the Project, including the Cigna Letter of Intent and the Principal Term Sheet, and to harm plaintiffs without any basis in law.

55.    The aforementioned conduct on the part of defendant constitutes tortious interference with contract.

56.    By reason of the foregoing, plaintiffs have suffered compensatory and consequential damages in an amount to proven at trial, but reasonably believed to be in excess of $862,000.00, plus interest.

## COUNT FIVE
## PRIMA FACIE TORT

57.    The aforementioned conduct was intended by defendant to interfere with the

completion of the Project, including the Cigna Letter of Intent and the Principal Term Sheet, and to harm plaintiffs without any basis in law.

58.    The aforementioned conduct on the part of defendant constitutes *prima facie* tort.

59.    By reason of the foregoing, plaintiffs have suffered compensatory and consequential damages in an amount to proven at trial, but reasonably believed to be in excess of $862,000.00, plus interest.

**WHEREFORE**, plaintiffs demand Judgment against defendant, JOHN H. RICHMAN as follows:

1.    On Count One, a declaratory judgment determining that SWR was legally terminated on or about September 15, 2012, and that thereafter, any rights that defendant, JOHN H. RICHMAN had as a venture member of SWR and in and to the Project and any other potential project ended and terminated as of such date.

2.    On Count Two, a permanent injunction against defendant, JOHN H. RICHMAN restraining and enjoining him from representing himself as a venture member of SWR or having any interest in the Project or any other potential project.

3.    On Count Three, compensatory and consequential damages against defendant JOHN H. RICHMAN in an amount to proven at trial, but reasonably believed to be in excess of $862,000.00, plus interest.

4.    On Count Four, compensatory and consequential damages against defendant JOHN H. RICHMAN in an amount to proven at trial, but reasonably believed to be in excess of $862,000.00, plus interest.

5.    On Count Five, compensatory and consequential damages against

defendant JOHN H. RICHMAN in an amount to proven at trial, but reasonably believed to be in excess of $862,000.00, plus interest.

      6.     Reasonable attorneys' fees: and

      7.     Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all triable issues in this action.

Dated:        White Plains, New York
               February 4, 2013

                      KLAPPER & FASS
                      Attorneys for Plaintiffs

                      By:_____
                          Daniel A. Fass
                      170 Hamilton Avenue, Suite 318
                      White Plains, New York 10601
                      (914) 287-6466